In the Matter of the CITY OF NEW YORK, Appellant-Respondent, Relative to Acquiring Title to Real Property, Bounded by East 120th Street, and Other Streets, in the Borough of Manhattan, as a Site for Public School 79 and Recreational Purposes. MANHATTAN RENOVATION CORP., Respondent-Appellant; HANNAH SLATER, Appellant.

First Department, July 9, 1963.

*Irving W. Genn* of counsel (*Seymour B. Quel* with him on the brief; *Leo A. Larkin, Corporation Counsel,* attorney), for appellant-respondent.

*Alfred D. Jahr* of counsel (*Jahr & Abberman,* attorneys), for respondent-appellant.

BREITEL, J. P. The city and claimant cross-appeal from an award in condemnation allowing $45,150 to the claimant, of which $40,000 was for the building. The only issue is the value to be accorded the building, the claimant arguing that it is a church building entitled to valuation as a specialty ($77,288), and the city urging that it should be valued on an estimated income basis for use as housing, meeting place, and storage ($20,000).

Involved is a three-story and basement brick building, with a one-story extension, located at 51 East 120th Street, in Manhattan, and occupying a plot 17 feet by 100 feet 11 inches. The building had been constructed in 1888, had been used as a tenement house, and also, at one time, as a church. It had been located in a slum neighborhood and the condemnation was for the purpose of erecting an elementary school. The property was last purchased by claimant in July, 1959 for $7,500, all cash. It was then vacant. That same year claimant remodeled the building to provide a church auditorium on the basement level, a church office and study, and residences on the two upper floors. Title vested, in April, 1960, before the remodeled building could be put to any economic use.

The actual cost of renovation was never established. The alteration permit application ultimately recited an anticipated cost of $4,500. There were earlier estimates of cost in the application of $8,000 and $18,000. Claimant's expert testified to a sound value for the improvement of $77,288.

The circumstances are very much like those which affected Damage Parcel 8 in *Matter of City of New York* (*Madison Houses*) (17 A D 2d 317, 319–320). In each instance, an old tenement building had been converted into a church building for use by an existing or prospective congregation of small size. In each instance, the converted building was reconvertible to its old or a new use capable of yielding rental income. Such

relative ease of convertibility and reconvertibility negates the suggestion that a specialty building was involved (*Matter of City of New York [Madison Houses]*, *supra*; *Matter of City of New York [Lincoln Sq. Clearance Project]*, 15 A D 2d 153, 171–172, affd. on limited appeal 12 N Y 2d 1086).

The city provided proof of the estimated rental value of the residence portions of the building and of the other space for meetings or storage space. The city expert related the church use to that for meetings making it evident that he did not think the building was much of a church. He found an annual rental value of $3,960, of which he assigned $90 per month for each of the apartments on the two upper stories and $150 a month for the balance of the (church) space. Subtracting estimated operating expenses of $1,509 plus a 5% contingency reserve and capitalizing the estimated net income of $2,254 at 11%, overall for land and building, he found a market value of roundly $20,000.

The claimant offered no proof of rental value and sought an award based on the theory that the building was a specialty. Thus claimant defaulted in providing its proof of rental value or even the cost of the alterations. Consequently, this court could fix the value solely on the proof submitted by the city, there being insufficient in the record to sustain the higher value fixed by Special Term. However, the case was tried before this court's decision in *Matter of City of New York (Madison Houses)* (*supra*) and *Matter of City of New York (Lincoln Sq. Clearance Project)* (*supra*) and it would appear to be fairer for a new trial to be directed upon which claimant may remedy its omissions in the proof.*

Upon a new trial, it would seem desirable for claimant to prove the actual cost of the alterations, not because the cost is controlling, but because the reasonable cost of alterations made so close in time to vesting date would have some probative value, if the alterations indeed serve the highest economic use (cf. *Matter of Seagram & Sons v. Tax Comm.*, 18 A D 2d 109, 114–116; but, see, also, *Matter of City of New York [Lincoln Sq. Clearance Project]*, 15 A D 2d 153, 172, *supra*). But, above all, claimant would have the burden of establishing the rental value of the premises for whatever is its highest economic use (e.g., as a dwelling, combination dwelling and church, or a combination dwelling, storage and meeting place as argued by the city) or else the city estimates of rental value are entitled to prevail.

---

* In the *Madison Houses* case, the claimants' expert had testified to rental value, albeit on cross-examination, so that claimants' proof of rental value was also available.

The point of the matter is, as already noted, that if the building is, in any event, marketable as a church, the value is not determinable by reproduction cost, because even as a church it is not unique or a specialty, any more than was the church in *Matter of City of New York* (*Madison Houses*) (*supra*). Indeed, that case presented for the claimant a stronger set of facts than here, for there the entire building had been converted to church use. Neither there nor here would an owner reconstruct these buildings anew, if, as here, an old tenement could be purchased for $7,500 and converted at a cost of $4,500, $8,000, or $18,000, whichever was the cost of conversion in the same 12-month period in which title vested.

On the foregoing analysis there appears to be no supportable basis in the record for the award by Special Term. The $40,000 for the building alone is twice the estimated capitalized value of the rental income established only by the city's proof. On the other hand, it is about half of the reconstruction value established by claimant's witness.

Accordingly, so much of the decree determining the value of Damage Parcel 43 should be reversed, on the law and the facts, the award vacated and the matter remanded, in the exercise of discretion, for a new trial, without costs to either party, and the decree should otherwise be affirmed, also without costs to any party.

McNALLY, EAGER, STEUER and BASTOW, JJ., concur.

Decree, so far as appealed from, unanimously reversed, on the law and on the facts, the award vacated and the matter remanded, in the exercise of discretion, for a new trial, and otherwise affirmed, without costs to any party.